Filed 4/28/22  P. v. Parada CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>  v.<br><br>ALFREDO PARADA,<br><br>        Defendant and Appellant. | B311330<br><br>(Los Angeles County<br>Super. Ct. No. BA032211) |

APPEAL from an order of the Superior Court of Los  Angeles County, Kathleen Kennedy, Judge.  Affirmed.

Janice Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Appellant Alfredo Parada appeals the denial of his petition for resentencing under Penal Code section 1170.95.[1]  He contends the trial court erred in finding that he failed to establish a prima facie case and therefore was ineligible for relief as a matter of law.  We conclude that the trial court was entitled to rely on the record of conviction in denying the petition at the prima facie stage.  Moreover, any error was harmless, because the jury instructions from the trial make clear that appellant's convictions for murder and attempted murder were not based on theories of felony murder or natural and probable consequences.  Consequently, he is ineligible for relief under section 1170.95. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     *The Crime*

The facts and procedural history of appellant's crime are drawn from the opinion in the prior direct appeal by appellant and his co-defendant, Walter Hernandez, *People v. Hernandez* (Aug. 25, 1994, BA024449) [nonpub. opn.].

#### A.     *Evidence*

On the afternoon of August 27, 1990, Lisa Ochoa and Evelyn Descali were walking home from school.  The girls stopped near an El Pollo Loco restaurant on Vermont Avenue to talk to a friend, Julio Cabrera.  Henry Pineda, Jose Cabrera, and Moises Lozano were standing nearby.  Suddenly, one of the boys yelled a gang name, sounding like "Drifters," and they started running.  Pineda testified at trial that he and some friends from his gang, M.S., were on the corner of Olympic Boulevard and Vermont Avenue when he saw two guys coming toward him.  He immediately started running because he was in his "enemies' neighborhood."

Ochoa testified that she heard two or three gunshots and ducked between some cars.  When she looked up, she saw Hernandez putting something into the waistband of his pants.  Descali suffered a fatal gunshot wound to her head.  Meanwhile, Pineda, Lozano, and the Cabreras ran away

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

from the area.  Julio Cabrera was shot in the back and sustained wounds through his lung. Jose Cabrera was shot in his left foot.

Several days later, Ochoa identified a photograph of Hernandez as the man who shot Descali.  At trial, she initially identified Hernandez as a shooter, but later stated she was "not sure."

The manager of the El Pollo Loco testified that she heard gunshots, looked out the drive-through window, and saw appellant shooting a gun toward Vermont Avenue while Hernandez was "[l]ooking to the sides."  She saw both men run through the alley next to the restaurant.  At trial, the manager identified both appellant and Hernandez as the men she had seen fleeing from the scene of the shooting.  An employee working at a nearby clothing store testified that he also heard gunshots, looked out of the doorway, and saw Hernandez and appellant running to the El Pollo Loco parking lot.  As Hernandez ran by, he shoved a silver gun into his waistband.

About an hour after the shooting, Los Angeles Police Department officers saw appellant and Hernandez at an arcade that was a Drifters gang "stronghold."  The officers took Hernandez and appellant in a police vehicle to the crime scene.  As they drove past the scene, appellant asked, "Was there a shooting here?"  Both appellant and Hernandez were identified by several witnesses and were arrested.

After his arrest, appellant made a telephone call from the police station.  A police officer heard appellant say, "Pistola, hide it."

Both Hernandez and appellant presented an alibi defense at trial. Appellant, who was 16 years old at the time of the shooting, testified that at the time of the shooting he was at someone's home watching the "Gummi Bears" cartoon on television.  The prosecution presented evidence that "Gummi Bears" was not on television at the day and time of the shooting.

B.    *Conviction*

On April 29, 1992, the jury convicted appellant of one count of second degree murder (§ 187, subd. (a)) and three counts of attempted murder as to Julio Cabrera, Jose Cabrera, and Henry Pineda[2] (§§ 664, 187, subd. (a)).  As

---

[2] Appellant's opening brief on appeal states that he was convicted of only two counts of attempted murder instead of three.  The prosecution made

3

to all four counts, the jury found true the allegation that appellant personally used a firearm (§ 12022.5). In addition, as to two of the attempted murder counts, the jury found true the allegation that appellant personally and intentionally inflicted great bodily injury on the victim (§ 12022.7).[3]

In December 1992, the court sentenced appellant as follows: fifteen years to life in state prison on count one (murder), plus four years for the firearm enhancement; a consecutive term of seven years on count two (attempted murder of Julio Cabrera), plus three years for the bodily injury enhancement; a consecutive term of 28 months on count three (attempted murder of Jose Cabrera), plus one year for the bodily injury enhancement; and a consecutive term of 28 months on count four (attempted murder of Pineda). The court stayed terms for the firearm enhancements on the attempted murder counts.

C. *Direct Appeal*

Appellant and Hernandez appealed their convictions. After counsel for appellant filed an opening brief that raised no issues, appellant submitted a letter challenging several items of evidence and arguing that the evidence was insufficient to support his conviction. We rejected appellant's contentions, noting that the evidence supporting his conviction was "overwhelming" and the record did not support his other claims. We further found after a review of the entire record that no arguable issues existed pursuant to *People v. Wende* (1979) 25 Cal.3d 436, 441. We therefore affirmed appellant's conviction.

## II. *Resentencing Petition*

A. *Petition and Briefing*

On March 22, 2019, appellant filed a form petition for resentencing under section 1170.95. The trial court appointed counsel for appellant and directed the prosecution to respond to appellant's petition.

---

the same statement in its opposition brief below. However, the record before us—including verdict forms, the transcript of the sentencing hearing, and the prior appellate opinion—demonstrates that appellant was convicted on three counts of attempted murder.

[3] Pineda, the victim on the third attempted murder count, was not injured and the verdict form for that count did not include the allegation regarding bodily injury.

4

In its opposition, the prosecution argued that appellant was ineligible for relief under section 1170.95 because he was a direct aider and abettor in the murder and attempted murders of which he was convicted and was not convicted under the felony murder rule. Citing our appellate opinion, which it attached as an exhibit, the prosecution argued that appellant was "an actual shooter who acted with the intent to kill." The prosecution also noted the jury's findings that appellant personally used a firearm and personally and intentionally inflicted great bodily injury in two of the attempted murder counts.[4] The prosecution also attached as exhibits the verdict forms and the transcript of the sentencing hearing.

In his reply, appellant argued that he had made a prima facie showing of eligibility by filing a "properly completed 1170.95 petition and declaration" and "based on the entire record of conviction." Appellant attached as an exhibit a single page of reporter's transcript, purportedly from the prosecution's closing argument at trial. Therein, the prosecutor argued that if the jury could not determine which of the two defendants shot Descali, "the law covers that too. . . . [W]hen a principal is liable for the action of someone he aids and abets."

B. *Hearing*

On October 9, 2020, the court found appellant had made a prima facie showing of eligibility and issued an order to show cause. Appellant subsequently waived his appearance for the resentencing hearing. At a status hearing on January 15, 2021, the prosecution provided additional exhibits to the court, including transcripts from the prior appeal and the complete jury instructions. The jury was not instructed on felony murder or the natural and probable consequences doctrine. Appellant did not submit any further evidence.

The court heard appellant's petition on February 8, 2021. The prosecution argued that "although we are at OSC, the lower threshold of even a prima facie case hasn't been met. Now that the record is before the court, it shows that the jury wasn't instructed on either the natural and probable consequences doctrine or the felony murder rule. So 1170.95 is not

---

[4] The prosecution also argued that the statute was unconstitutional, but later withdrew that contention.

applicable." Appellant's counsel responded that he had set forth his position in his briefing and had "nothing further to add. The court has the record."

The court denied the petition, stating, "[T]his is one of those cases that I think came up while we were on lockdown. . . . When I was working from home for a few months earlier this year, I didn't have access to court files. And so I just appointed counsel on cases that, if I had a chance to review the court file, [I] would not have. Because I don't think that this falls within 1170.95 after reviewing all the materials, including the jury instructions that were submitted by counsel from the trial itself, as well as, I think there was a copy of the appellate opinion." The court thus found that appellant had not established a prima facie case for relief. Appellant timely appealed.

## DISCUSSION

### I.     *Senate Bill 1437 and Section 1170.95*

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) "In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended" to file a petition seeking resentencing.[5] (*Ibid.*, citing *People v. Gentile* (2020) 10 Cal.5th 830, 838-839.) A facially adequate petition entitles a petitioner to the appointment of counsel and a response from the prosecution. (§ 1170.95, subds. (b)(1), (c); *Lewis, supra*, 11 Cal.5th at p. 970.)

With the benefit of the parties' briefing, "the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*Lewis, supra*, 11 Cal.5th at p.

---

[5] Senate Bill No. 775 (Stats. 2021, ch. 551), effective January 1, 2022, amended section 1170.95 to apply to those convicted of "attempted murder under the natural and probable consequences doctrine." (§ 1170.95, subd. (a); see also *id.* subds. (a)(1)-(a)(3).)

960.) "[T]he 'prima facie bar was intentionally and correctly set very low.'" (*Id*. at p. 972.) "[A]t the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id*. at p. 974, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).) "'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Lewis*, supra, 11 Cal.5th at p. 971, quoting *Drayton, supra*, 47 Cal.App.5th at p. 979.) As amended by Senate Bill 775, section 1170.95, subdivision (c) provides, in pertinent part: "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (Stats. 2021, ch. 551, § 2; § 1170.95, subd. (c).)

If the court determines that the petitioner has made a prima facie showing for relief, it must issue an order to show cause. (§ 1170.95, subd. (c); *Lewis, supra*, 11 Cal.5th at p. 971.) The court must then hold an evidentiary hearing to determine whether to vacate the murder conviction (§ 1170.95, subd. (d)(1)), at which "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens" (§ 1170.95, subd. (d)(3)). At the hearing stage, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).)

## II.  *Analysis*

Appellant argues the trial court improperly denied his petition at the prima facie stage after reviewing the underlying record of conviction and finding he was precluded from relief as a matter of law. "This is a purely legal conclusion, which we review de novo." (See *People. v. Murillo* (2020) 54 Cal.App.5th 160, 167-168, review granted Nov. 18, 2020, S264978; *People v. Turner* (2020) 45 Cal.App.5th 428, 435.)

A defendant is ineligible for relief as a matter of law where the record conclusively shows that the jury actually relied upon—and the defendant's murder or attempted murder conviction actually rests upon—a theory of liability that is unaffected by section 1170.95 (that is, on the theory that the

defendant was the actual shooter or directly aided and abetted the shooter). (§ 1170.95, subd. (a)(3); see also *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1157, 1167-1168 [petitioner not entitled to relief where he was convicted as direct aider and abettor].) As part of the record of conviction, the trial court may consider the prior appellate opinion, jury instructions, verdict form(s), and any special findings or enhancement allegations the jury found true to determine if the petition makes a prima facie showing of entitlement to relief. (*Lewis, supra*, 11 Cal.5th at p. 957; *People v. Duchine* (2021) 60 Cal.App.5th 798, 815; see also *People v. Jenkins* (2021) 70 Cal.App.5th 924, 935; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 (*Soto*) [the trial court may "rely on the jury instructions, which are part of the record of conviction, in assessing the prima facie showings under section 1170.95(c)"], overruled on another ground by *Lewis, supra*, 11 Cal.5th at p. 957; *People v. Daniel* (2020) 57 Cal.App.5th 666, 677 (*Daniel*) [court may consult the jury instructions], review granted Feb. 24, 2021, S266336, review dismissed December 1, 2021.)

Here, the jury instructions conclusively demonstrate appellant is ineligible for relief. Where "no instructions were given on felony murder or murder under the natural and probable consequences doctrine," the defendant is "not '[a] person convicted of felony murder or murder under a natural and probable consequences theory,' and he is therefore ineligible for relief as matter of law." (*Daniel, supra*, 57 Cal.App.5th at p. 677; see also *Soto, supra,* 51 Cal.App.5th at p. 1059 ["Soto did not make a prima facie showing that he is entitled to relief under section 1170.95 because the jury instructions given at his trial conclusively demonstrate as a matter of law that he was not convicted of murder under a natural and probable consequences theory or of felony murder"]; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899, overruled in part on another ground by *Lewis, supra*, 11 Cal.5th at pp. 962-963 [record showed defendant was the actual killer where jury instructions did not include any instruction on natural and probable consequences or felony murder and the jury found the defendant personally used weapon]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674-675, overruled in part on another ground by *Lewis, supra*, 11 Cal.5th at pp. 962-963 [absence of jury instructions on felony murder or natural and probable consequences doctrine justified summary denial of petition].)

Appellant does not dispute that the trial court was entitled to consider the record of conviction at the prima facie stage. Instead, he contends that the record of conviction "does not conclusively establish as a matter of law" that he was ineligible and that the court improperly "evaluated and weighed the evidence."

While we agree that weighing the evidence and factfinding are impermissible at the prima facie stage (see *Lewis, supra*, 11 Cal.5th at pp. 970-972), we reject appellant's argument that the court did so here. Instead, the record of conviction shows that appellant was not convicted of murder or attempted murder under a felony murder or natural and probable consequences theory. In addition to the fact that the jury was not instructed on those theories, the jury found that appellant had personally used a firearm as to all four counts and had personally and intentionally inflicted great bodily injury on the two attempted murder victims who sustained gunshot wounds. As such, the jury necessarily concluded that appellant acted as the shooter and/or directly aided and abetted the murder and attempted murders. (See, e.g., *People v. Tarkington, supra,* 49 Cal.App.5th at p. 899 [finding as a matter of law that the defendant was the actual killer including because of the "jury's finding that Tarkington personally used a deadly and dangerous weapon"]; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 330, overruled on another ground by *Lewis, supra*, 11 Cal.5th at pp. 962-963 ["The record of conviction might also include other information that establishes the petitioner is ineligible for relief as a matter of law . . . for example, a petitioner who . . . was found to have personally and intentionally discharged a firearm causing great bodily injury or death in a single victim homicide"].) Appellant points to no evidence suggesting otherwise. The record thus established appellant's ineligibility for relief as a matter of law and the trial court did not err in denying appellant's petition without holding the full order to show cause hearing.

Appellant also contends that the trial court erred because it did not clearly indicate that it was relying on the jury instructions or other evidence as the basis for its ruling. As such, he argues that the court failed to "provide a statement fully setting forth its reasons" for declining to issue an order to show cause, as required under the newly amended section 1170.95,

subdivision (c). We are not persuaded. The trial court specifically referred to the jury instructions in concluding that appellant had not met his burden to make a prima facie showing, and explained that the court had not been able to review the record when making the original prima facie finding. Even assuming that the court's statements on the record were inadequate, the error was harmless because the record of conviction, including the jury instructions, shows appellant was ineligible for relief under section 1170.95 as a matter of law.

Under the harmless error standard, a section 1170.95 petitioner must "'demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.' [Citations.]" (*Lewis, supra*, 11 Cal.5th at p. 974.) Appellant cannot meet this burden. Section 1170.95 applies to "[a] person convicted of felony murder or murder under a natural and probable consequences theory." (§ 1170.95, subd. (a).) On his section 1170.95 petition, appellant checked the box stating, "At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine." However, he does not dispute that his jury was not instructed on felony murder or the natural and probable consequences doctrine. Thus, appellant cannot demonstrate that absent any error, there is a reasonable probability that the trial court would have found a prima facie case for relief.

## DISPOSITION

The order denying appellant's section 1170.95 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

MANELLA, P. J.                    WILLHITE, J.

10